IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JUNE 12, 2000 Session

## STATE OF TENNESSEE, DEPARTMENT OF TRANSPORTATION v. SUNSET MARINA AND RESORT, INC., AND TONY SLOAN

**Direct Appeal from the Circuit Court for Pickett County**
**No. 789; The Honorable John Maddux, Judge     ,**

---

**No. M1999-00880-COA-R3-CV - Filed October 12, 2000**

---

This appeal arises out of what can loosely be defined as a condemnation case. The State of Tennessee, acting through the Department of Transportation, received an easement from the Corps of Engineers for the purpose of building a bridge across Dale Hollow Lake in Pickett County, Tennessee. The bridge was to be built across land owned by the United States and operated by the Defendants as a resort and marina under a lease for commercial purposes. The State filed a Petition for Condemnation against the leaseholder in the Pickett County Circuit Court seeking to take the land under its power of eminent domain. The trial court determined that the State could not take the land based on the Supremacy Clause of the United States Constitution. However, the State had already begun work on the project, and, ultimately, the bridge was completed. The court held a trial to determine the damages which the leaseholder had suffered as a result of the bridge being placed across the leasehold. The trial court granted a partial directed verdict and awarded the leaseholder $287,115. The trial court also awarded the leaseholder $100,000 as attorneys' fees in lieu of injunctive relief. The State appeals from the partial directed verdict and the award of attorneys' fees.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, William E. James, Senior Counsel, for Appellant

Jon E. Jones, Phillips M. Smalling, for Appellees

## OPINION

The State of Tennessee appeals from the judgment of the Pickett County Circuit Court. For the reasons stated herein, we affirm the trial court in part and reverse in part.

## Facts and Procedural History

In the late 1940's, Mildred Harrison, d/b/a/ Sunset Boat Dock, entered into a "lease for commercial concession purposes" to operate a commercial resort and boat dock on Dale Hollow Lake. The lessor was the Corps of Engineers, and the underlying fee was held by the Secretary of the Army for the United States of America.

On July 28, 1993, the Secretary of the Army granted the State of Tennessee, acting through the Department of Transportation (hereinafter referred to as "the State"), a "Second Supplemental Easement" to an unnumbered easement dated "31 October 1949" for the relocation of State Route 42 upon, over, and across government owned lands within the Dale Hollow Dam and Reservoir project in Pickett County, Tennessee. At least part of the land contemplated by the easement fell within the leasehold of Mildred Harrison. Paragraph 16 of the Second Supplemental Easement provided that the easement was granted subject to the lease of Mildred Harrison, and it would be the responsibility of the State to reach an agreement with Mildred Harrison for compensation for damages resulting from the State's use of the granted right-of-way.

On November 5, 1993, the State filed a Petition to Condemn against Mildred Harrison, d/b/a Sunset Boat Dock. In its complaint and attached exhibit, the State sought to condemn Mildred Harrison's entire leasehold interest for the purpose of building a bridge across Dale Hollow Lake. An order of possession purporting to transfer the entire leasehold interest of Mildred Harrison to the State was entered on November 17, 1993.

On January 6, 1994, Sunset Marina and Resort, Inc. filed a motion to intervene in the condemnation proceeding filed by the State against Mildred Harrison. The motion alleged that Mildred Harrison had assigned all of her right, title, and interest in the leasehold to Sunset Marina and Resort, Inc. The parties entered an agreed order on November 28, 1995, substituting Sunset Marina and Resort, Inc. and Tony Sloan ("Appellee") as party defendant in the place of Mildred Harrison.[1]

The Appellee answered the complaint and asserted various arguments as to why the State's petition for condemnation could not be sustained. First, the Appellee argued that the proposed condemnation was illegal under the Supremacy Clause of the United States Constitution.[2] Also, the

---

[1] There is no issue in regards to the transfer of the lease, and we will assume that it was valid in all respects.

[2] This argument basically objected to the State's use of a condemnation proceeding to take land belonging to
(continued...)

Appellee argued that the condemnation was a violation of the language of the conditional easement granted to the State by the Corps of Engineers because the State failed to obtain an agreement with Mildred Harrison or the Appellee regarding compensation for the taking. Based on these arguments, the Appellee filed a motion for injunction, asking the trial court to enjoin the State from entering onto the leasehold and to prohibit all further construction activity.

During pretrial proceedings, the parties discovered that the original complaint had sought to take Mildred Harrison's entire leasehold and concession. The State asked the court's permission to withdraw its original petition and to file an amended complaint. The permission was granted, and the State filed an amended petition in which it sought to take certain improvements located within the area of construction, namely a cedar duplex cabin which was removed in order to place a support pillar for the bridge.[3]

On April 8, 1996, the parties appeared before the trial court for determination of title to the improvements sought to be acquired by the State and on the motion for injunction. At the conclusion of the hearing, the trial court ruled that the State had no right to condemn the property because it had failed to obtain an agreement with the Appellee or the Appellee's predecessor. The court also ruled that the Supremacy Clause of the United States Constitution prohibited the State from condemning a lease granted by the United States of America. The court vacated the order of November 17, 1993, which purported to transfer the entire leasehold interest to the State, and denied the State's application for a new order of possession. Finally, the trial court announced that an injunction would be entered on May 15, 1996, prohibiting further construction on the bridge. At that time, the bridge was under construction, and over twelve million dollars ($12,000,000.00), approximately three-fourths of the total estimated cost, had been expended toward completion of the project.

The Appellee subsequently withdrew its request for an injunction, and asked the trial court to determine and award damages in lieu of injunctive relief. The Appellee asserted that the measure of damages should be based on a consideration of both: 1) the cost to the State to find and construct an equally feasible and adequate alternative location for the bridge and roadway and 2) the value of the property taken and damaged. The State contended that the measure of damages should be restricted to the value of a duplex cabin removed from the property during construction of the bridge.

The case was tried to a jury on January 29 and 30, 1997, on the issue of damages. The State's only proof related to the value of the cabin located within the easement granted by the Corps of Engineers.[4] The Appellee presented proof regarding all damages caused to their leasehold by the

---

[2](...continued)
the United States.

[3] The State conceded that it had no right to take any interest of the Appellee except for the improvements.

[4] The State contends that its refusal to offer proof was based on its belief that the trial court did not have
(continued...)

construction, including, but not limited to, the value of the cabin. At the close of proof, the State moved for a directed verdict on all damage issues, and the Appellee moved for a partial directed verdict in its favor on all condemnation damage issues except for the value of the cabin. The attorney for the State acknowledged that the State had not offered any evidence regarding any damage issues other than the value of the cabin, and that there was no evidence in the record from which the jury could derive any damage awards except for those damage figures testified to by the Appellee's expert, with the exception of the value of the cabin. The trial court overruled the motion for directed verdict made by the State and granted the Appellee's motion for partial directed verdict. Based on the unrebutted evidence introduced in the case, the trial court entered a directed verdict in favor of the Appellee in the amount of $287,115.00. Thereafter, counsel for both parties made closing arguments to the jury regarding the damages that should be awarded for the taking of the cabin. The jury returned a verdict in the amount of $52,725.00. Finally, the trial court awarded the Appellee $100,000.00 for attorneys' fees in lieu of injunctive relief. The trial court reasoned that such an award was the only way the Appellee could have justice for the State's illegal activities since, but for the State's actions, the Appellee would not have incurred attorneys' fees. The court ruled that upon payment of the $100,000, the property rights in the land under the bridge would vest in the State, and the Appellee's right to an injunction would be extinguished.

The State brings the present appeal claiming error in the partial directed verdict granted in favor of the Appellee, as well as the $100,000 awarded in lieu of injunctive relief. The State does not claim error in the $52,725 jury verdict rendered in favor of the Appellee.

## Law and Analysis

We are faced with two claims of error in this appeal. The first is the State's claim that the trial court erred in the award of $287,115 as condemnation damages. The second issue relates to the trial court's decision to award attorneys' fees of $100,000 in lieu of injunctive relief. We shall consider each of these claims in turn.

### I. Condemnation Damages

In support of its claim that the trial court erred in granting the Appellee a directed verdict in the amount of $287,115, the State basically presents three contentions. First, it argues that the trial court lacked jurisdiction to award damages at all. Second, the State contends that any damages arising from this entire scenario resulted not from the State's building of the bridge, but rather from the granting of the easement to the State by the Secretary of the Army. Third, the State contends that it did not "take" any leasehold interest of the Appellee other than the improvement constructed upon

---

[4](...continued)
subject-matter jurisdiction to adjudicate damages.

the land.[5]  To some extent, all three of these arguments are inter-related insofar as they involve the role of the United States.[6]

We believe the State's arguments rest on fundamental mis-characterizations of the facts.  The State contends that the trial court did not have subject matter jurisdiction over the dispute because it involved the construction of rights granted by the United States of America.  According to the State's position, this dispute could only be adjudicated in a proceeding in a United States District Court.  We believe this argument fails from the outset.  The United States, through the Corps of Engineers and the Secretary of the Army, certainly had a role in the evolution of this case as it granted both the lease and the easement.  However, that role did not extend to causing the damages which are the subject of this appeal.  While the Corps of Engineers did grant the State an easement to build the bridge, it did so with the express intent of protecting the Appellee's lease.  The easement was specifically designed to be subservient to the lease, and the easement required that the State reach an agreement with the leaseholder prior to exercising the rights granted by the easement.  Our review of the record leads us to two inescapable conclusions.  First, there was no federal claim adjudicated in the trial court, nor was the United States a necessary party.  The dispute in this case existed solely between the State of Tennessee and the leaseholder, the Appellee.  Second, the damage caused to the Appellee's leasehold was not the fault of the United States.  The granting of the easement did not, as the State contends, cause the damage.  Rather, the illegal exercise of that easement by the State caused the damages.

We can perceive of no claim that the Appellee could have asserted against the United States, and we summarily reject any argument by the State attempting to transfer liability.  Both of the State's arguments rest on the premise that the United States, through the Corps of Engineers, is responsible for the damages.  There is no support for such a conclusion.  The State disregarded an express provision in the easement granted by the Corps of Engineers by not reaching an agreement with Mildred Harrison prior to building the bridge.  The State, not the United States, built the bridge that caused the damages.  It is unreasonable to conclude that the State's actions are somehow the responsibility of the United States.  The easement granted by the Corps of Engineers contained safeguards which, if followed, would have protected the Appellee's interests.  The mere granting of the easement did not damage the Appellee's leasehold.  The responsibility for those damages lies squarely with the State.  Therefore, we reject any argument advanced by the State which is based on the premise that the United States was, or should have been, a party to this action.  Accordingly, we conclude that the trial court did have jurisdiction to adjudicate the dispute, and the State's argument placing responsibility on the United States is without merit.

---

[5] The State appears to concede that it was required to pay as damages the value of the cedar duplex cabin insofar as no issue is presented on appeal regarding the jury award of $52,725.  As we understand the State's position, this was the only amount which it owed as the cabin was the only part of the land taken through the State's power of eminent domain.

[6] When we refer to the "United States," we are referring to the governmental entity represented in this case by the Secretary of the Army.

The State's final argument also rests on a mis-characterization of its actions. The State contends that it only "took" the improvement which had been constructed on the land.[7] In this regard, the State contends that the only damages owed to the Appellee was the value of the cedar duplex cabin which was removed. In regard to this argument, we note, with approval, the statements of the trial court:

It is undisputed in this case that the bridge and highway which are under construction completely dissect the lease. The State has located large massive concrete pillars and abutments on the land within the leasehold concession. In addition, the State is constructing an impassable drainage ditch through the middle of the lease. The Defendants assert that persons and property on the leasehold adjacent to the bridge will potentially be endangered by debris thrown from the bridge. They contend that water on the bridge is collected into drains which, during heavy rains, concentrate the water into dangerous streams which fall onto their property from several hundred feet above. They say they have lost building sites and dockage space and that the road and bridge have damaged the value of their lease, both within and outside the area of the proposed easement.

Based on the plans for the construction filed in court and on the admissions of the State in open court, it is obvious that the State's position that it is not taking any leasehold interest except for improvement is a fallacy. The State asks this court to pretend that the defendants will not suffer and damages, except to improvements, because the State, by its own admission, had no power to take or damage the defendants' leasehold. The fact, however, that the State did not have power to take does not change the reality of the fact that the State did take, and is continuing to take, leasehold rights and that the construction and operation of the bridge damages the defendants' economic rights in their leasehold over and above the value of their improvements. The State's position that it is attempting to take only improvements cannot be reconciled to the reality of the plans and the actual construction.

(emphasis added). The trial court accurately stated the complete fallacy of the present argument. Regardless of what the state could take, or thought it was taking, the conclusion is inescapable that the construction of the bridge damaged the Appellee far beyond removing the cabin.

In summary, we find no merit in the State's argument that the trial court lacked jurisdiction to adjudicate the issue of damages to the Appellee's leasehold. Similarly, we reject the State's argument that they were not responsible for the damages sustained by the Appellee. Finally, we believe it to be clear that the State caused damages beyond those associated with the improvements

---

[7] This argument is based on rather strange logic. The State contends that the only damage it caused was the damage it legally could cause. In other words, the State only took the cedar cabin because that is the only thing it could legally take.

constructed on the leasehold.  As such, we find no error in the trial court's granting of the Appellee's motion for partial directed verdict.

## *II. Attorneys' Fees*

The remaining issue for our consideration is the question of whether the trial court erred in awarding the Appellee $100,000 in lieu of injunctive relief.  The State argues that there is no authority, statutory or otherwise, upon which to base this award.  The Appellee argues that this award is sustainable because there was no other method through which the trial court could compensate it for the actions of the State.

We certainly sympathize with the plight of the Appellee in this case.  However, we must agree with the State's argument that there is no basis for the trial court to have awarded the attorneys' fees in lieu of injunctive relief.  The Appellee has not pointed to any authority which would allow us to sustain the award.  While we recognize the ends which the trial court was attempting to achieve, we are unable to approve of the means absent some authority.  While no issue has been presented regarding the injunction, we note that an injunction is an available remedy in cases such as the present.  The fact that an injunction was not feasible in this case does not allow the court to substitute remedies.  The Appellee dropped their request for an injunction, and we can find no authority which would allow them an alternative remedy.  Therefore, we are bound to conclude that the trial court erred in awarding the Appellee attorneys' fees of $100,000 in lieu of injunctive relief.

## Conclusion

For the foregoing reasons, the decision of the trial court granting the Appellee's motion for partial directed verdict and awarding $287,115 as condemnation damages is affirmed.  The award of $100,000 in lieu of injunctive relief is hereby reversed.  Costs of this appeal are taxed to the Appellant, State of Tennessee, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE